**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KENNY KENESE,<br><br>    Plaintiff,<br><br>v.<br><br>CATHOLIC CHARITIES OF THE<br>ARCHDIOCESE OF CHICAGO,<br>and SHERRY SIMMONS (Individually),<br><br><br>    Defendants. | No. 18-cv-08272<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenny Kenese (Kenese) worked at Defendant Catholic Charities of the Archdiocese of Chicago (CCAC) as a Care Coordinator/Case Manager. Defendant Sherry Simmons (Simmons) was Kenese's CCAC supervisor. Kenese alleges that he was subjected to discrimination based on his ethnicity and ancestry and a hostile work environment during his tenure at CCAC. And, Kenese was terminated the day after he raised concerns to Human Resources about suspected HIPAA violations by Simmons and other co-workers. Kenese has now filed a five-count Second Amended Complaint (SAC) against CCAC and Simmons, in her individual capacity (collectively, Defendants), alleging 42 U.S.C. § 1981 ethnicity and ancestry discrimination (Count I), 42 U.S.C. § 1981 hostile work environment (Count II), 42

U.S.C. § 1981 retaliation (Count III), retaliation under 775 ILCS 5/6-101 (Count IV), and retaliation under the Illinois Whistleblower Act (Count V). R. 48, SAC.[1]

Defendants' Combined Motion to Dismiss Kenese's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is before the Court. R. 57, Mot. Dismiss. For the reasons that follow, Defendants' motion is denied as to Counts I and II and granted as to Counts III, IV, and V.

## Background

Kenese is a 46-year-old male whose ethnicity and ancestry are traceable to the Federal Republic of Burundi. SAC ¶¶ 6, 11.[2] On January 16, 2018, Kenese was hired by CCAC to serve in the position of Care Coordinator/Case Manager. *Id*. ¶ 12. The Care Coordinator/Case Manager role required a six-month probation period, after which, Kenese would become a full-time employee with benefits. *Id*. ¶ 16. Kenese alleges that during his interview for the position, he volunteered information regarding his tribe, language, and country of origin. *Id*. ¶ 14.

Simmons,[3] an African-American female, was assigned as Kenese's CCAC supervisor. SAC ¶¶ 17, 23. Kenese alleges that Simmons "did not like" him. *Id*. ¶ 18. In February 2018, Simmons asked Kenese, "[w]hy are you here?" *Id*. ¶ 20. Kenese

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Kenese. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[3]Defendant Sherry Simmons notes that Kenese's Second Amended Complaint misspells her name. *See* Mot. Dismiss at 1 n.1 ("Plaintiff refers to Defendant Simmons incorrectly as 'Simons.'"). The Court employs Defendant's spelling—Simmons.

explained that he benefitted from CCAC's services while living in Burundi, and he wanted to give back to the organization. *Id.* Simmons replied, "[y]ou should get another job. This is not the right job for you." *Id.* On another occasion, on or about April 11, 2018, Simmons called Kenese into her office and for about two hours, "reprimand[ed] him for being too slow" at processing files. *Id.* ¶ 24. Again, on April 16, 2018, Simmons called Kenese into her office and reprimanded him, calling Kenese a "failure" and telling him that he would not pass his probation, if she "had anything to do with it." *Id.* ¶ 26. Kenese alleged that he felt Simmons was "intimidating and belittling him" during this meeting. *Id.*

Simmons increased her reprimanding during the months of April and May 2018 to spending two to three hours on a periodic basis "berat[ing]" him "for being too slow at his work performance" and telling him that he would not pass the probationary period; he needs another job; and he was not a good fit for CCAC. *Id.* ¶ 28. On or about May 17, 2018, "as part of her routine verbal and abuse," Simmons told Kenese that she could not understand his accent. *Id.* ¶ 31.[4]

After first being reprimanded, Kenese told two of his Caucasian co-workers about Simmons' criticisms and berating. SAC ¶ 25. The co-workers told Kenese that they work through files faster, because they often take HIPAA-related files home at the end of the day and continue processing them after work hours. *Id.* After a

---

[4]The Court notes that Kenese claimed, "[o]n or about May 17, 2018, Defendant Simons [sic], as part of her routine verbal and abuse, told plaintiff he speaks with an accent she *can* understand." *Id.* ¶ 31. (emphasis added). Considering the context of paragraph 31's next sentence ("Plaintiff told her she is the first one on the job telling him he speaks with an accent that is not understood."), the Court finds that the line, "with an accent she can understand," was likely an error and should read, "with an accent she cannot understand." *Id.*

reprimanding session, Kenese informed Simmons that his co-workers were bringing their work files home, believing this practice to be a HIPAA violation. *Id*. ¶ 27. Simmons asked Kenese who was taking files home. *Id*. Kenese did not report any names. *Id*. Simmons then told Kenese, "[y]ou can take your files home and do not just imagine that I do not know anything about this information." *Id*. A month later, during another reprimanding meeting, Simmons wrote up Kenese for poor work performance and told him, "[i]f you do not take your file home and work on them, it would be your problem because you will not pass your probationary period." *Id*. ¶ 32. Kenese later learned that Simmons was hiding work files from him (either taking them home or hiding them where Kenese could not easily find them), which slowed his performance completion rate. *Id*. ¶¶ 29, 33.

On or about July 25, 2018, Kenese informed CCAC's Human Resources Manager of potential HIPAA violations related to Simmons and his co-workers bringing files home. SAC ¶ 34. In reporting the potential violations, Kenese asked if his job was in jeopardy. *Id*. The manager told Kenese, "Nothing will happen to you. Catholic Charities will never tolerate such behavior and we will investigate all matters immediately." *Id*. ¶ 35. Kenese also informed the manager that he had begun feeling depressed and requested mental health assistance. *Id*. ¶ 36. The next day, on July 26, 2018, CCAC terminated Kenese's employment. SAC ¶ 37.

Kenese subsequently filed suit against CCAC and Simmons, individually. R. 1, Compl. The complaint has been amended twice, and the Second Amended Complaint is the operative complaint. *See* SAC. Kenese alleges that Defendants' discriminatory

4

and retaliatory conduct was based on his ethnicity and ancestry. *Id.* ¶¶ 41, 43, 51, 53. To that end and as noted above, Kenese asserts the following claims: Section 1981 ethnicity and ancestry discrimination (Count I), Section 1981 hostile work environment (Count II), Section 1981 retaliation (Count III), retaliation under 775 ILCS 5/6-101 (Count IV), and retaliation under the Illinois Whistleblower Act (Count V). Now, Defendants jointly move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6). *See* Mot. Dismiss.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I. Count I – Section 1981 Discrimination

In Count I, Kenese alleges that Defendants discriminated against him based on his ethnicity and ancestry. SAC ¶¶ 38–47. To state a claim for discrimination based on ethnicity or ancestry under Section 1981, a plaintiff must allege that he: 1) is a member of a protected class; 2) performed his job satisfactorily; 3) suffered an adverse employment action; and 4) was treated less favorably than a similarly situated employee outside of his protected class. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 604–05 (7th Cir. 2014).[5] A complaint alleging ethnicity or ancestry discrimination under Section 1981 need only aver that the employer instituted a specified adverse employment action against the plaintiff based on his or her ethnicity or ancestry. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *see also Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) ("A complaint that identified 'the type of discrimination' the plaintiff thought occurred, 'by whom, . . . and when' was "all [the plaintiff] needed to put in her complaint."). Additionally, in a Section 1981 discrimination claim the plaintiff must plead that *but for* his ethnicity and ancestry, he would not have suffered the loss of a legally protected right. *See Mir v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 717091, at *3 (7th Cir. Feb. 24, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, S. Ct. 1009, 1019 (2020)) (emphasis added).

---

[5]The Seventh Circuit considers discrimination claims under Title VII and Section 1981 to have the same elements. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). Therefore, this Opinion relies on cases examining employment discrimination under both statutes interchangeably.

Defendants advance several arguments in support of their Motion to Dismiss Count I. First, they assert that Kenese fails to plausibly plead discrimination based on ancestry or ethnicity, because the Second Amended Complaint does not allege a "material adverse employment action." Mot. Dismiss at 3. Second, Defendants argue that Kenese fails to plausibly allege the requisite "but for" element—that he was terminated *because* of his ancestry or ethnicity. *Id.* at 4. Third, Defendants alternatively argue that even if Kenese has stated a Section 1981 discrimination claim, Kenese fails to allege that Simmons was a decision-maker related to any material adverse employment action and therefore cannot be held *individually* liable. *Id.* at 5. The Court examines each of Defendants' arguments in turn.

## A. Material Adverse Employment Action Caused by Ethnicity or Ancestry

Defendants argue that Kenese fails to plausibly allege he was terminated or otherwise subjected to a "material adverse employment action" because of his ethnicity or ancestry, and even if Kenese has sufficiently stated a discrimination claim, Simmons cannot be held individually liable. Mot. Dismiss at 3–5. Plaintiff retorts that he has pled each requisite element of a discrimination claim based on the indirect method of liability, and Simmons' actions subject her to personal liability based on the "cat's paw" theory of liability.[6] R. 63, Resp. at 5–7.[7]

---

[6] The Seventh Circuit has clarified that district courts are to stop separating "direct" from "indirect" evidence in cases involving employment discrimination. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Therefore, the Court does not categorize this analysis as "direct" or "indirect."

[7] Defendants do not dispute that Kenese is a member of a protected class based on his ethnicity and ancestry, and that he performed his job satisfactorily, prongs one and two of a Section 1981 discrimination claim. *See G& S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534,

7

"In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff 'a significant change in employment status.'" *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)). "Adverse employment actions . . . generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). In analyzing the two possible adverse employment actions (Kenese's termination and the CCAC work environment), the Court considers whether the alleged termination and/or work environment satisfy the adverse employment action prong; whether Kenese has sufficiently alleged but-for causation; and whether Simmons can be held personally liable for the alleged discrimination.

## 1. Termination

Kenese alleges that he was terminated by CCAC. SAC ¶ 37. As a threshold matter, Defendants appear to challenge Kenese's contention that his termination constitutes a materially adverse employment action for the purposes of Section 1981 by arguing that Kenese failed to allege that he "suffered any reduction in financial

---

538 (7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss"). No matter, as the Court finds that Kenese has pled that he is a member of a protected class and that he performed his job activities satisfactorily.

terms of employment." Mot. Dismiss at 5. Defendants appear to be extracting the "reduction in financial terms" language from the *Barton* categories of adverse employment actions. *Barton*, 662 F.3d at 453 ("Adverse employment actions . . . generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment . . . ."). The Court finds this largely undeveloped argument unavailing. Kenese clearly alleges that he was terminated from his compensated employment at CCAC. SAC ¶ 37. And this allegation falls squarely into the first category of adverse employment actions under *Barton*. *Barton*, 662 F.3d at 453.

Finding that Kenese has pled a materially adverse employment action, the Court turns to whether Kenese has sufficiently pled that his membership in a protected class was the but-for causation of his termination. Here, Kenese alleges the following: "CCAC terminated my employment" (SAC ¶ 37); "As noted above, Plaintiff was [the] subject of discrimination because of his ancestry." (*id.* ¶ 41); and "The foregoing conduct constitutes . . . illegal intentional discrimination" (*id.* ¶ 43). Defendants argue that Kenese only recites the elements of the claim and asserts conclusory allegations, which should not survive a motion to dismiss. Mot. Dismiss at 4, 5 (citing *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011)). Although the Court agrees that Kenese pleads minimal facts connecting his termination to his ancestry, it disagrees that such pleading dooms his claim. Rather, as noted above, the Seventh Circuit has repeatedly held that the pleading requirement for employment discrimination claims is minimal. *See Clark v. Law Office of Terrence Kennedy, Jr.*,

709 F. App'x 826, 828 (7th Cir. 2017) ("The pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom."); *see also, e.g., Stumm v. Wilkie*, 796 F. App'x 292, 295 (7th Cir. 2019) (in an employment discrimination case, "a plaintiff need plead only the type of discrimination, when it occurred, and by whom"); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) (confirming that the pleading standard in employment discrimination cases is "undemanding"); *Huri*, 804 F.3d at 833 (employment discrimination complaint need only plead the type of discrimination, by whom, and when it occurred); *Tomayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.").

Considering the minimal pleading requirement and drawing inferences in favor of the Kenese, the Court finds that Kenese has done just enough to put Defendants on notice that he was allegedly discriminated against "because of his ancestry." *Compare Tate*, 809 F.3d at 346 ("I was discharged. I believe I was discriminated against because of . . . my sex, male . . . .") *with* SAC ¶¶ 37, 41, 43 ("CCAC terminated my employment." "As noted above, Plaintiff was [the] subject of discrimination because of his ancestry." "The foregoing conduct constitutes . . . illegal intentional discrimination").

Finally, Defendants alternatively argue that even if the Court finds that Kenese has stated an employment discrimination claim, Simmons may not be held

individually liable, because Kenese has failed to allege that she was a "decision maker" in the termination process. Mot. Dismiss at 5. Kenese disagrees, arguing that Simmons is individually liable for the alleged discrimination under the "cat's paw" theory of liability. Resp. at 7. The "cat's paw" theory can support individual liability "for a subordinate employee who intentionally causes a decision-maker to take adverse action against another employee." *Hernandez v. J. Sterling Morton High Sch., Dist. 201*, 2019 WL 5963613, at *7 (N.D. Ill. Nov. 13, 2019) (quoting *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("[T]he 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action.").

Although Kenese is correct that the "cat's paw" theory of liability may be applied to an individual who while not a decision-maker, influences a decision-maker, the Second Amended Complaint is devoid of any facts that would allow a factfinder to plausibly conclude that Simmons "intentionally cause[d] a decision-maker" to terminate Kenese. *See id.* Kenese's argument that Simmons set in motion the chain of events which ultimately led to his termination is conclusory and not supported by any allegations in the Second Amended Complaint. *See* Resp. at 7. While Kenese's Response cites to his various interactions with Simmons, none of them are referenced

in connection with his eventual termination. SAC ¶¶ 20, 24, 25–29, 31. Therefore, Kenese's cat's paw theory of liability fails here. Having failed to plead that Simmons was a decision-maker or the proverbial cat's paw, Simmons cannot be held personally liable for Kenese's termination based on his ancestry. Simmons is not off the hook entirely, however, as Kenese alleges a hostile work environment that could also form the basis of a Section 1981 discrimination claim.

## 2. Hostile Work Environment

Kenese also alleges that Simmons subjected him to lengthy and repeated reprimands, hid his files, wrote a negative performance evaluation, and told him that she did not understand his accent, all based on his ethnicity and ancestry. SAC ¶¶ 24, 26, 28, 29, 31, 32, 41, 43, 51, 53. A hostile work environment qualifies as an adverse employment action in an employment discrimination claim. *Barton*, 662 F.3d at 453–54. As discussed below, the Court finds that Kenese has adequately pled a hostile work environment claim. *See infra* Section II. Kenese's allegations connecting the hostile work environment to his ethnicity and ancestry are similar to those connecting his termination to his ethnicity and ancestry. *See* SAC ¶¶ 41, 43, 51, 53. As such, for the reasons discussed in the preceding section, Kenese has also satisfied the low pleading standard required to sufficiently allege an employment discrimination claim based on ancestry via a hostile work environment.

Unlike the termination allegation, however, the actions that serve as the basis of Kenese's hostile work environment claim were directly attributed to Simmons. An individual may be held personally liable under Section 1981 if she caused the

constitutional deprivation. *Smith*, 681 F.3d at 899; *see also Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 702 (N.D. Ill. 2012) (finding that claim of individual liability may proceed when the defendant employee is alleged to have created a hostile work environment). Kenese has sufficiently alleged that Simmons created a hostile work environment by frequently berating him and commenting about his accent and as such, has alleged personal liability as to Simmons in a hostile work environment employment discrimination claim.

Overall, the Court finds that Kenese has sufficiently pled a Section 1981 employment discrimination claim based on both termination and hostile work environment allegations. While Kenese failed to plead Simmons' personal liability as to the termination allegation in particular, Simmons can be held individually liable for allegations regarding a hostile work environment. The Court makes no comment on the future of Count I, but at this early juncture, the Court finds that Kenese has pled just enough to state an employment discrimination claim under Section 1981 against both CCAC and Simmons, individually. Defendants' Motion to Dismiss Count I is denied, and Count I is permitted to proceed.

## II.    Count II – Section 1981 Hostile Work Environment

In Count II, Kenese alleges that Defendants subjected him to a hostile work environment on the basis of his ancestry or ethnicity during his tenure at CCAC. SAC ¶¶ 48–55. To state a Section 1981 hostile work environment claim, a plaintiff must allege (1) he was subject to unwelcome harassment; (2) the harassment was based on his ethnicity or ancestry; (3) the harassment was severe or pervasive to alter the

13

conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Cooper–Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive relationship." *Huri*, 804 F.3d at 834.

### A. Harassment Based on Ethnicity and Ancestry

Defendants argue that Kenese fails to state an actionable hostile work environment claim based on membership in a protected class. Mot. Dismiss 6–8. In his Second Amended Complaint, Kenese alleges that Simmons was aware of his ethnicity and ancestry; the abusive behavior was based on his ethnicity or ancestry; and his non-Burundian coworkers were not subjected to the same treatment. *See* SAC ¶¶ 20, 51, 53. Defendants contend that even in viewing the allegations of the Second Amended Complaint in the light most favorable to Kenese, the allegations depict at most, a work setting of verbal disagreements about job duties between a supervisor and an employee. *Id.* at 7. And, Defendants maintain that Simmons' remark about Kenese's accent is the only allegation that relates to a protected class. *Id.* at 7.

The Court finds that Kenese has pled just enough to state the first two elements (unwelcome harassment and harassment based on ethnicity or ancestry) of a Section 1981 hostile work environment claim. *See* SAC ¶¶ 51, 53. General allegations of harassment based on ethnicity or ancestry are sufficient at the motion to dismiss stage. *See Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 795 (N.D. Ill. 2015) (pleading that defendant's "sexual harassment of plaintiff was based on

14

plaintiff's gender" is sufficient to plead intentional discrimination) (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). And, actions alleged in a hostile work environment claim do not have to be of an ethnic or ancestral character. *See Shanoff v. Illinois Dep't of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001) (finding that courts should also examine behavior engaged in with the *purpose* of discriminating based on a protected class when assessing a hostile work environment claim). Like in *Michalowski*, Kenese has pled just enough facts to assert that the purpose behind Simmons' actions was to discriminate against him based on his ethnicity or ancestry. *See Michalowski*, 82 F. Supp. 3d at 795; *see also Tate*, 809 F.3d at 346 (stating that a discrimination claim is only required to allege a specific adverse employment action against the plaintiff based on a protected class). The Court finds that Kenese has sufficiently pled the first and second elements of a Section 1981 hostile environment claim.

## B. Severe and Pervasive Harassment

Defendants further argue that an isolated insensitive comment regarding Kenese's accent is not sufficient to satisfy the third element (severity and pervasiveness) of a hostile work environment claim. Mot. Dismiss at 7. Defendants assert that Simmons' comment about Kenese's accent was not overtly racist or derogatory. Mot. Dismiss at 7 (citing *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) and *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 561 (7th Cir. 2019)). And therefore, Defendants conclude that Kenese fails to plausibly allege that the harassment reaches the requisite level of severity and pervasiveness. Mot.

Dismiss at 7. In response, Kenese argues that he alleged that Simmons actions were humiliating and interfered with his job duties, and therefore sufficiently severe to state a claim for hostile work environment. Resp. at 8.

"In evaluating the severity and pervasiveness of the conduct, [a court] examine[s] all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Smith v. Northeastern Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). Ultimately, to satisfy the "severe or pervasive" prong, the plaintiff must show that the work environment was both subjectively and objectively offensive. *Robinson v. Sappington,* 351 F.3d 317, 329 (7th Cir. 2003). In other words, the environment must be "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Cerros v. Steel Technologies, Inc.,* 288 F.3d 1040, 1045 (7th Cir. 2002).

Here, Kenese alleges that Simmons subjected him to repeated verbal reprimands (each reprimand lasting between two and three hours); hid Kenese's work files; and told Kenese that he speaks with an accent that she does not understand. SAC ¶¶ 24, 26, 28, 29, 31, 50. Kenese further alleges that Simmons' treatment took a toll on his mental health, and he requested mental health assistance from CCAC's Human Resources Manager. *See id.* ¶ 36. Finally, Kenese pled that Defendants' conduct resulted in pain and suffering, humiliation, embarrassment, mental distress, stress, and high blood pressure. *Id.* ¶ 54.

16

Defendants only cite to two cases to support the contention that the alleged harassment was not severe or pervasive enough to state a hostile work environment claim. Mot. Dismiss at 7 (*Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) and *Smith v. Illinois Dep't of Transp.*, 936 F.3d 554, 561 (7th Cir. 2019)). The Court finds *Dandy* and *Smith* unavailing, as they were both decided at summary judgment, not on a Rule 12(b)(6) motion. *See ACLU of Ill. V. City of Chicago,* 2011 U.S. Dist. LEXIS 115865, *10 (N.D. Ill. Sept. 23, 2011) ("Holdings from cases decided at summary judgment are generally inapplicable to a motion to dismiss, since, by the time of summary judgment, the parties had an opportunity to engage in discovery to identify the evidence that supports their claims; at the motion to dismiss stage, the parties have not had the opportunity to do so.").

Overall, for purposes of a motion to dismiss, the Court agrees with Kenese that in alleging repeated verbal reprimands (with each reprimand lasting between two and three hours) and hidden work files, he has sufficiently alleged that Simmons' conduct was objectively offensive, and in alleging the toll on his mental health, he has also sufficiently alleged that Simmons' conduct was subjectively offensive. These allegations plausibly assert the third element of a hostile environment claim.

Notably, Defendants do not challenge the fourth element (whether there is a basis for employer liability), and therefore, the Court need not examine this requirement in detail. However, since Simmons was one of Kenese's supervisors, her alleged discriminatory actions serve as the basis for employer liability. SAC ¶ 17;

17

*Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018) (finding that employers are strictly liable for discriminatory acts of supervisors).

All in all, the Court finds that Kenese has sufficiently pled the four elements of a hostile work environment claim under Section 1981. Like with Count I, the Court makes no comment on the future of Count II, but at this early juncture, the Court finds that Kenese has pled just enough to state a hostile work environment. The Court accordingly denies Defendants' Motion to Dismiss Count II.

### III.    Count III – Section 1981 Retaliation

In Count III, Kenese claims that Defendants violated Section 1981 when they fired him shortly after he notified CCAC Human Resources of suspected HIPAA violations. Resp. at 9. "To state a retaliation claim under § 1981 based on events occurring in the workplace, an employee must show that [he] suffered a materially adverse action because [he] engaged in protected activity." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016). An employee engages in a "protected activity" when he "oppos[es] impermissible discrimination." *Smith*, 681 F.3d at 896; *see also* 42 U.S.C. § 2000e-2(a) (protecting individuals who oppose/report discrimination on the basis of an individual's race, color, religion, sex, or national origin). Citing no authority in support, Kenese claims that discussing a potential HIPAA violation with Human Resources is a protected activity. Resp. at 9.

In comparing the instant Second Amended Complaint with Kenese's First Amended Complaint (FAC), it is clear that Kenese has simply recycled much of his

already-dismissed Title VII retaliation claim. *See* R. 21, FAC. Judge Seeger[8] dismissed Title VII retaliation claim for failure to plead a protected activity, because discussing a potential HIPAA violation with Human Resources does not involve opposing discrimination based on any protected class. R. 45, 3/19/2020 Order at 4; *see also Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class."); *Humphries*, 474 F.3d at 403–04 (collecting cases holding that "the same prima facie requirements [are applied] to discrimination claims brought under Title VII and Section 1981").

The Court finds that Kenese has not salvaged his retaliation claim here. Even in the third iteration of his complaint, Kenese has failed to allege that reporting potential HIPAA violations to Human Resources constituted a statutorily protected activity. Having failed to plead a requisite element of a Section 1981 retaliation claim, the Court grants Defendants' Motion to Dismiss with regard to Count III. The Court dismisses Count III with prejudice. *See Ruiz v. Kinsella*, 770 F. Supp. 2d 936, 943 (N.D. Ill. 2011) (dismissing the plaintiffs' third failed attempt at pleading conspiracy and procedural due process claims with prejudice).

### IV. Count IV – Illinois Civil Rights Act Retaliation

In Count IV, Kenese pleads a retaliation claim under the Illinois Human Rights Act (IHRA) based on the same conduct underlying his Section 1981 retaliation

---

[8]This case was pending before Judge Seeger until it was reassigned to the Court on September 28, 2020. *See* R. 65, Min. Entry.

claim—he was fired shortly after he reported his co-workers' potential HIPAA violations. SAC ¶¶ 64–71. Defendants argue that Count IV fails for the same reason Count III fails: "Plaintiff has failed to allege that he engaged in a protected activity and suffered a material adverse employment action because of that protected activity." Mot. Dismiss at 9. The Court agrees.

To plead retaliation under the IHRA, the plaintiff must allege that 1) he was engaged in a statutorily protected activity; 2) his employer took a materially adverse action against the plaintiff; and 3) there is a causal connection between the two. *See Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018).[9] Kenese argues that he has adequately alleged an IHRA claim, because "protected activity" includes internal complaints to managers. Resp. at 9–10. Although internal complaints can be protected by the IHRA, the complaints must be necessarily related to discrimination based on "sex, race, national origin, or some other protected class." *See Skiba*, 884 F.3d at 718. Termination stemming from the reporting of potential HIPAA violations to a supervisor does not qualify as retaliation under *Skiba*. Like with Section 1981 retaliation, Kenese fails to allege retaliation based on a protected activity under the IHRA, and Defendants' Motion to Dismiss Count IV is granted. Given that the Court can see no set of facts by which Kenese could sufficiently plead an IHRA claim (and

---

[9]The Seventh Circuit has found the framework of a Section 1981, Title VII, and IHRA retaliation claim to be "essentially identical" and need not be analyzed separately. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 n. 39 (7th Cir. 2016). However, given this is Kenese's third pleading attempt and any dismissal will be with prejudice, the Court engages in a brief analysis of Plaintiff's IHRA retaliation claim here. All in all, Count IV fails for the same reasons Kenese's Section 1981 retaliation claim fails.

especially given that Judge Seeger already dismissed a Title VII retaliation claim for failure to plead a connection between Kenese's reporting and his membership in a protected class), the Court dismisses Count IV with prejudice. *See Sullivan v. Viskase Corp.*, 1992 WL 191121, at *2 (N.D. Ill. Aug. 5, 1992) (dismissing the intentional infliction of emotional distress count with prejudice, because the Court has "no doubt that Plaintiff cannot make out a claim for intentional infliction of emotional distress based on the factual scenario of his termination or the alcohol counseling.") (citing *Lewis v. Local Union No. 100,* 750 F.2d 1368, 1373 (7th Cir. 1984)).

## V. Count V – Illinois Whistleblower Act Retaliation

Finally, in Count V, Kenese alleges that Defendants violated Section 20.1 of the Illinois Whistleblower Act (IWA) by terminating him after he reported HIPPA violations by Simmons and Caucasian colleagues to the Human Resources Manager. SAC ¶¶ 72–79. Defendants argue that Kenese fails to state a plausible IWA claim, and the Court agrees. Mot. Dismiss at 10–11.

Under the IWA, an employer may not retaliate against an employee:

> who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation. 740 ILCS 174/15(a);

> for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation a State or federal law, rule or regulation. 740 ILCS 174/15 (b);

for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation. 740 ILCS 174/20;

through an act or omission materially adverse to a reasonable employee because of the employee disclosing or attempting to disclose public corruption or wrong doing. 740 ILCS 174/20.1; or

by threatening an employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act. 740 ILCS 174/20.2

"The purpose of the IWA is to protect employees from adverse employment actions in retaliation for reporting or refusing to engage in unlawful conduct by their employer." *Huang v. Fluidmesh Networks, LLC*, 2017 WL 3034672, at *6–7 (N.D. Ill. July 18, 2017). Importantly, there is no cause of action under the IWA where an employee reveals information *only to his or her employer. See Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (emphasis added); *see also Rufus v. City of Chi.*, 2018 WL 1911799, at *4 (N.D. Ill. Apr. 23, 2018) ("The IWA normally does not protect employees who merely make internal disclosures to their own employers."). Here, Kenese does not allege that he disclosed any alleged HIPAA violations by Simmons or his colleagues to anyone other than CCAC's own Human Resources Manager. As such, Kenese fails to plausibly state an IWA claim, and Defendants' Motion to Dismiss Count V is granted. Given that the Court can see no set of facts by which Kenese could sufficiently plead an IWA claim, the Court dismisses Count IV with prejudice. *See Sullivan*, 1992 WL 191121, at *2.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [57] is granted in part and denied in part. Defendants' Motion to Dismiss Counts I and II is denied. Defendants' Motion to Dismiss Counts III, IV, and V is granted, and Counts III, IV, and V are dismissed with prejudice. The parties are instructed to file a joint status report on or before April 20, 2021.

Dated: March 30, 2021

United States District Judge
Franklin U. Valderrama